Alexander Robertson, IV (CA State Bar No. 127042)
  arobertson@arobertsonlaw.com
Mark J. Uyeno (CA State Bar No. 189063)
  muyeno@arobertsonlaw.com
ROBERTSON & ASSOCIATES, LLP
32121 Lindero Canyon Road, Suite 200
Westlake Village, CA 91361
Tel: (818) 851-3850 / Fax: (818) 851-3851

Jerome L. Ringler (CA State Bar No. 59918)
  jlr@ringlerschmidt.com
Catherine Burke Schmidt (CA State Bar No. 212827)
  cbs@ringlerschmidt.com
Members of RINGLER SCHMIDT, A LAW CORPORATION
233 Wilshire Boulevard, Suite 900
Santa Monica, CA 90401
Tel:  (310) 955-4105/Fax: (310) 955-4106

Thomas A. Kearney (CA State Bar No. 90045)
  tak@kearneylittlefield.com
Prescott Littlefield (CA State Bar No. 259049)
  pwl@kearneylittlefield.com
Members of KEARNEY LITTLEFIELD LLP
3436 N. Verdugo Road, Suite 230
Glendale, CA 91208
Tel: (213) 473-1900/ Fax: (213) 473-1919

Attorneys for Plaintiffs And The Proposed Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK GRIFFITHS, an individual, on behalf of himself and all others similarly situated; JIM TOWERY, an individual, on behalf of himself and all similarly situated; MAARTEN VERHOEVEN, an individual, on behalf of himself and all similarly situated; PATRICIA COTTINGTON, an individual, on behalf of herself and all similarly situated; RYAN CALDERON, an individual, on behalf of himself and all similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LUMBER LIQUIDATORS, INC., a Delaware corporation, <br><br> Defendant. | Case No. 2:15-cv-1783 <br><br> **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** <br><br> 1. **Violations of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.);** <br> 2. **Violations of the False Advertising Law (Cal. Bus. & Prof. Code § 17500);** <br> 3. **Violation of Consumer Legal Remedies Act (Cal. Civ. Code § 1750);** <br> 4. **Fraudulent Concealment; and** <br> 5. **Breach of Implied Warranty.** <br><br> **DEMAND FOR A JURY TRIAL** |

Plaintiffs DEREK GRIFFITHS, JIM TOWERY, MAARTEN VERHOEVEN, PATRICIA COTTINGTON and RYAN CALDERON (collectively, "Plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against Defendant LUMBER LIQUIDATORS, INC. ("Defendant"). Plaintiffs hereby allege, on information and belief, except as to those allegations that pertain to the named Plaintiffs, which allegations are based on personal knowledge, as follows:

## INTRODUCTION

1.      Since 1988, the State of California has recognized that formaldehyde gas is a chemical known to cause cancer. By 1992, the California Air Resources Board ("CARB") had formally listed formaldehyde as a contaminant with no safe level of exposure.

2.      Certain building materials, including laminate flooring, are processed in a way that introduces formaldehyde into the material during manufacturing. In response, the CARB has passed regulations limiting the amount of formaldehyde that may be present. Specifically, the California Code of Regulations, title 17, (which addresses public health), sections 93120 through 93120.12 are known as the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products ("CARB Regulations"). The regulations apply to anyone who manufacturers, distributes, imports, sells, or supplies the designated materials in California.

3.      Defendant is a corporation that distributes, markets, and/or sells laminate wood flooring products in California that are subject to 17 California Code of Regulations sections 93120 through 93120.12.

4.      Defendant supervises and controls the manufacturing of its laminate wood flooring that takes place in China. Laminate wood flooring consists of a core of pressed wood [commonly referred to as medium-duty fiberboard ("MDF")], which is made up of wood particles bonded together with glue or resin, a high

quality photographic image of wood, and a scratch resistant coating.  On information and belief, urea-formaldehyde resin is used to bond the wood particles together in the MDF core of laminate flooring.

5.      For at least the last two years, certain laminate wood flooring ("Formaldehyde Flooring") manufactured, distributed, sold, and/or controlled by Defendant has contained formaldehyde in excess of the levels allowed under the CARB Regulations ("Design Defect").  On information and belief, Plaintiffs allege that Defendant's Formaldehyde Flooring, includes, but may not be limited to, the following products:

       a.    8 mm Bristol County Cherry Laminate Flooring;

       b.    8 mm Dream Home Nirvana French Oak Laminate Flooring;

       c.    8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring;

       d.    12 mm Dream Home Ispiri America's Mission Olive Laminate Flooring;

       e.    12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring;

       f.    12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring;

       g.    12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring;

       h.    12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring;

       i.    12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring;

       j.    12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring;

       k.    12 mm Dream Home Kensington Manor Golden Teak Laminate

Flooring;

l.   12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10029601);

m.   12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10023958);

n.   12 mm Dream Home Kensington Manor Handscraped Summer Retreat Teak Laminate Flooring;

o.   12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring;

p.   12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring;

q.   12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring;

r.   12 mm Dream Home St. James African Mahogany Laminate Flooring;

s.   12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring;

t.   12 mm Dream Home St. James Brazilian Koa Laminate Flooring;

u.   12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring;

v.   12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring;

w.   12 mm Dream Home St. James Golden Acacia Laminate Flooring;

x.   12 mm Dream Home St. James Nantucket Beech Laminate Flooring;

y.   12 mm Dream Home St. James Oceanside Plank Bamboo

1    Laminate Flooring;

2    z.    12 mm Dream Home St. James Vintner's Reserve Laminate

3          Flooring; and

4    aa.   15 mm Dream Home St. James Sky Lakes Pine Laminate

5          Flooring.

6    bb.   Morning Star Bamboo Flooring

7    6.    Defendant supervises and/or controls the manufacturing and packaging

8    of Formaldehyde Flooring in China that Defendant then distributes, markets, and/or

9    sells in California.

10   7.    Plaintiffs bring this class action on behalf of themselves and all others

11   similarly situated, asserting claims under California's Unfair Competition Law, Cal.

12   Bus. & Prof. Code § 17200, et seq. ("UCL" or "§17200"); the Consumer Legal

13   Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA"); False Advertising in

14   Violation of Cal. Bus & Prof. Code § 17500, et seq.; fraudulent concealment; and

15   breach of implied warranty.  Plaintiffs seek damages and equitable relief on behalf

16   of the Class, which relief includes but is not limited to the following: providing class

17   members with safe laminate wood flooring products, or if no such product exists, to

18   refund Plaintiffs and class members the full amount paid for Formaldehyde Flooring

19   and the cost to remove the Formaldehyde Flooring; costs and expenses, including

20   attorneys' fees and expert fees; injunctive relief and declaratory relief; and any

21   additional relief that this Court determines to be necessary to provide complete relief

22   to Plaintiffs and the Class.

## PARTIES

23

24   8.    Plaintiff Derek Griffiths resides in Northridge, California.

25   9.    Plaintiff Jim Towery resides in Indian Wells, California.

26   10.   Plaintiff Maarten Verhoeven resides in San Luis Obispo, California.

27   11.   Plaintiff Patricia Cottington resides in Fresno, California.

28   12.   Plaintiff Ryan Calderon resides in Ladera Ranch, California.

13.     Plaintiffs purchased Formaldehyde Flooring believing it to be reasonably safe to use for the purpose for which they were intended.

14.     Defendant Lumber Liquidators, Inc. is a Delaware corporation with its headquarters and principal place of business in Toano, Virginia.  Defendant conducts substantial business in the State of California and in the County of Los Angeles.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) ("CAFA"), in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of a state different from the Defendant.

16.     This Court has personal jurisdiction over the parties in this action by the fact that Defendant is a corporation that is authorized to conduct business in California and it has intentionally availed itself of the laws and markets of California through the promotion, marketing, distribution and sale of its laminate wood flooring products. Each named Plaintiff purchased their Formaldehyde Flooring in California.

17.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Venue is also proper under 18 U.S.C. §1965(a), because Defendant transacts a substantial amount of its business in this District.  Plaintiffs are filing concurrently herewith an affidavit stating facts showing that this action has been commenced in a proper county pursuant to California Civil Code section 1780(c).

/ / /

/ / /

/ / /

**FACTUAL ALLEGATIONS**

18. On or about November, 23, 2014, Plaintiff DEREK GRIFFITHS purchased St. James 12mm Burnet Road Russet laminate flooring from a Lumber Liquidators' store located at 16735 Roscoe Boulevard, North Hills, California. The label on the packaging read, inter alia: "CARB CALIFORNIA 93120 PHASE 2 Compliant for Formaldehyde."

19. On or about August 25, 2013, Plaintiff JIM TOWERY purchased Morning Star ½" x 5" Strand Natural Click Bamboo flooring from Lumber Liquidators' Palm Desert Store No. 174 for a total purchase price of $4,008.82. Further, JIM TOWERY paid a professional the sum of $2,338.30 to install this flooring. The label on the packaging read, inter alia: "CARB NO. SCS-09-0015 [¶] CALIFORNIA 93120 PHASE 2 Compliant for Formaldehyde".

20. On or about October 13, 2014, Plaintiff MAARTEN VERHOEVEN purchased Kensington Manor Sandy Hills Hickory 12mm laminate flooring from Lumber Liquidators' San Luis Obispo Store No. 194, located at 170 Suburban Road, Suite 130, San Luis Obispo, California for the purchase price of $1,265.01. The label on the packaging read, inter alia: "CARB CALIFORNIA 93120 PHASE 2 Compliant for Formaldehyde".

21. On or about August 9, 2014, Plaintiff PATRICIA COTTINGTON purchased Kensington Manor Warm Springs Chestnut 12mm laminate flooring from the Lumber Liquidators' store located at 2955 S. Orange, Fresno, California for a purchase price of $1,440. The label on the packaging read, inter alia, "CARB No. SCS-CARB-000090, California 93120 Phase 2 Compliant for Formaldehyde."

22. On or about July 2012, Plaintiff RYAN CALDERON purchased Kensington Manor Imperial Teak 12mm laminate flooring from Lumber Liquidators' Santa Ana store. The label on the packaging read, inter alia, "CARB No. SCS-09-0015, California 93120 PHASE 2 Compliant for Formaldehyde."

/ / /

23.     Despite the fact that the Formaldehyde Flooring fails to meet California's requirements for formaldehyde emissions, Defendant has made numerous representations to the contrary.

24.     Defendant's website leads consumers to believe that its laminate wood flooring products comply with the CARB formaldehyde standards when they do not. The website states as follows:

Is Lumber Liquidators Compliant with the California law?

**Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards**. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

Does CARB only apply to California?

Though it currently applies only to products sold in California, **Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended** to sell the products in California or any other state/country.

What extra steps does Lumber Liquidators take to ensure compliance?

In addition to the California Air Resources Board requirements, Lumber Liquidators regularly selects one or more finished products from each of its suppliers and submits them for independent third-party lab testing. This is done as a monitoring activity to validate ongoing quality control.

25.     After the dangerous formaldehyde levels in Lumber Liquidators' products was featured on the CBS News program "60 Minutes," Lumber

1   Liquidators responded by posting a letter from its Chairman on its website stating:

2           Let me make one thing very clear – our laminate products, all of our products,

3           are 100% safe.

4           …

5           We comply with applicable regulations regarding our products, including

6           California standards for formaldehyde emissions for composite wood

7           products – the most stringent rules in the country. We take our commitment to

8           safety even further by employing compliance personnel around the world and

9           utilizing the latest in cutting- edge technology to provide our customers with

10          top quality and high value flooring.

11          26.    Moreover, the product packaging for Defendant's laminate wood

12   flooring states: "CARB . . . CALIFORNIA 93120 Phase 2 Compliant for

13   Formaldehyde." On information and belief, this statement is presented on all of

14   Defendant's laminate flooring product packaging regardless of whether the flooring

15   inside the packaging complies with the CARB standards.

16          27.    On information and belief, at all times relevant to this action,

17   Defendant has knowingly misrepresented its laminate wood flooring products as

18   CARB compliant and knowingly failed to disclose to consumers the unlawful levels

19   of formaldehyde emissions from its laminate wood flooring products

20          28.    Plaintiffs did not discover, nor would a reasonable consumer have had

21   reason to suspect that Defendant knowingly misrepresented its laminate wood

22   flooring products as CARB compliant and knowingly failed to disclose to

23   consumers the unlawful levels of formaldehyde emissions from its laminate wood

24   flooring products until March 1, 2015, when the "60 Minutes" report publicized it.

25          29.    Plaintiffs have suffered injury in fact and loss of money or property.

26   They have been damaged in the amount they paid for Formaldehyde Flooring.

27   Moreover, if no safe replacement laminate wood flooring product exists, Plaintiffs

28   have suffered damages in the amount of the full price they paid for Formaldehyde

1   Flooring and the cost to remove Formaldehyde Flooring and installation for

2   replacement flooring.  In the event safe replacement laminate wood flooring exists,

3   Plaintiffs' damages are the cost of replacing the defective Formaldehyde Flooring

4   with safe laminate wood flooring.

5   **CLASS ALLEGATIONS**

6       30.    This action may properly be maintained as a class action pursuant to

7   Federal Rules of Civil Procedure Rule 23.  The Class is sufficiently numerous, since

8   it is estimated to include tens of thousands of consumers throughout California, the

9   joinder of whom in one action is impracticable, and the disposition of whose claims

10  in a class action will provide substantial benefits to the parties and the Court.

11      31.    <u>Class Definition</u>: Without prejudice to later revisions, the Class which

12  Plaintiffs seeks to represent is composed of: all consumers who purchased

13  Formaldehyde Flooring in California from the time of their introduction in the

14  marketplace through and including the date of class notice (the "Class").  Excluded

15  from the Class are Defendant, its affiliates, employees, officers and directors,

16  persons or entities that distribute or sell Formaldehyde Flooring, the Judge(s)

17  assigned to this case, and the attorneys of record in this case.

18      32.    Throughout discovery in this litigation, Plaintiffs may find it

19  appropriate and/or necessary to amend the definition of the Class.  Plaintiffs reserve

20  the right to amend the Class definitions if discovery and further investigation reveal

21  that the Class should be expanded or otherwise modified.

22      33.    <u>Ascertainable Class</u>:  While Plaintiffs do not know the exact number

23  and identity of all class members, Plaintiffs are informed and believe that there are

24  tens, if not hundreds, of thousands of class members.  The precise number of

25  members can be ascertained through discovery, which will include Defendant's

26  sales, service and other business records.

27      34.    <u>Common Questions of Law and Fact Predominate</u>:  There is a well-

28  defined community of interest among the Class.  The questions of law and fact

1    common to the Class predominate over questions that may affect individual Class
2    Members. These questions of law and fact include, but are not limited to, the
3    following:

4              a.   Whether Defendant exercised reasonable care in testing its
5                   Formaldehyde Flooring prior to its release for commercial sale;

6              b.   Whether Defendant's Formaldehyde Flooring is defective when
7                   used as directed, intended or in a reasonably foreseeable manner;

8              c.   Whether feasible alternative safer formulations of the
9                   Formaldehyde Flooring were available;

10             d.   Whether Defendant's Formaldehyde Flooring was fit for its
11                  intended purpose;

12             e.   Whether Defendant has breached the implied warranty of fitness
13                  for a particular purpose;

14             f.   Whether Defendant has breached the implied warranty of
15                  merchantability;

16             g.   Whether Defendant has acted negligently;

17             h.   Whether Defendant knew that the Formaldehyde Flooring were,
18                  and are, materially defective;

19             i.   Whether Defendant omitted and concealed material facts from its
20                  communications and disclosures to Plaintiffs regarding the
21                  design defects inherent in the Formaldehyde Flooring;

22             j.   Whether Defendant breached its express and/or implied
23                  warranties;

24             k.   Whether Defendant is strictly liable to Plaintiffs and the class;

25             l.   Whether Defendant failed to warn Plaintiffs and the class;

26             m.   Whether Defendant has violated the UCL;

27             n.   Whether Defendant has violated the CLRA;

28             o.   Whether Defendant has received funds from Plaintiffs and class

1    members that it unjustly received;

2          p.    Whether Plaintiffs and proposed class members have been

3               harmed and the proper measure of relief;

4          q.    Whether Plaintiffs and proposed class members are entitled to an

5               award of punitive damages, attorneys' fees and expenses against

6               Defendant; and

7          r.    Whether, as a result of Defendant's misconduct, Plaintiffs are

8               entitled to equitable relief, and if so, the nature of such relief.

9      35.    Numerosity:  The Class is so numerous that the individual joinder of all

10  members of the Class is impractical under the circumstances of this case.  While the

11  exact number of members of the Class is unknown to Plaintiffs at this time,

12  Plaintiffs are informed and believe the Class consists of thousands of persons.

13  Individual joinder of Members of the Class is also impracticable because the

14  individual Members are dispersed throughout California.

15      36.    Typicality:  Plaintiffs' claims are typical of the claims of the members

16  of the proposed class.  Plaintiffs and all class members have been injured by the

17  same wrongful practices of Defendant.  Plaintiffs' claims arise from the same

18  practices and conduct that give rise to the claims of all class members and are based

19  on the same legal theories.

20      37.    Adequacy:  Plaintiffs will fairly and adequately represent and protect

21  the interests of the Class in that they have no disabling conflicts of interest that

22  would be antagonistic to those of the other members of the Class.  Plaintiffs seek no

23  relief that is antagonistic or adverse to the members of the Class and the

24  infringement of the rights and the damages they have suffered are typical of all other

25  Class Members.  Plaintiffs have retained attorneys experienced in consumer class

26  actions and complex litigation as counsel.

27      38.    Superiority:  The disposition of Plaintiffs' and proposed class

28  members' claims in a class action will provide substantial benefits to both the

1    parties and the Court.  The nature of this action and the nature of laws available to

2    Plaintiffs and the Class make the use of the class action device a particularly

3    efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the

4    wrongs alleged because:

5              a.    The individual amounts of damages involved, while not

6                    insubstantial, are such that individual actions or other individual

7                    remedies are impracticable and litigating individual actions

8                    would be too costly;

9              b.    If each Class Member was required to file an individual lawsuit,

10                   the Defendant would necessarily gain an unconscionable

11                   advantage since they would be able to exploit and overwhelm the

12                   limited resources of each individual Class Member with vastly

13                   superior financial and legal resources;

14             c.    The costs of individual suits could unreasonably consume the

15                   amounts that would be recovered;

16             d.    Given the size of individual proposed class member's claims and

17                   the expense of litigating those claims, few, if any, proposed class

18                   members could afford to or would seek legal redress individually

19                   for the wrongs Defendant committed against them and absent

20                   proposed class members have no substantial interest in

21                   individually controlling the prosecution of individual actions;

22             e.    This action will promote an orderly and expeditious

23                   administration and adjudication of the proposed class claims,

24                   economies of time, effort and resources will be fostered and

25                   uniformity of decisions will be insured; and

26             f.    Without a class action, proposed class members will continue to

27                   suffer damages, and Defendant's violations of law will proceed

28                   without remedy while Defendant continues to reap and retain the

1    substantial proceeds of its wrongful conduct.

2    g.    Plaintiffs know of no difficulty that will be encountered in the

3    management of this litigation that would preclude its

4    maintenance as a class action.

5    h.    Proof of a common business practice or factual pattern which

6    Plaintiffs experienced is representative of that experienced by the

7    Class and will establish the right of each member of the Class to

8    recover on the causes of action alleged; and

9    i.    Individual actions would create a risk of inconsistent results and

10    would be unnecessary and duplicative of this litigation.

11    39.    Plaintiffs and Class Members have all similarly suffered irreparable

12    harm and damages as a result of Defendant's unlawful and wrongful conduct.  This

13    action will provide substantial benefits to Plaintiffs, the Class and the public

14    because, absent this action, Plaintiffs and Class Members will continue to suffer

15    losses, thereby allowing Defendant's violations of law to proceed without remedy

16    and allowing Defendant to retain proceeds of its ill-gotten gains.

17    **FIRST CAUSE OF ACTION**

18    **Violations of the Unfair Competition Law**

19    **(Cal. Bus. & Prof. Code § 17200 et seq.)**

20    40.    Plaintiffs and the Class incorporate by reference each and every

21    preceding paragraph of this Complaint as if fully set forth herein.

22    41.    The acts, omissions, and practices of Defendant as alleged herein

23    constituted, and continue to constitute, unlawful and unfair business acts and

24    practices within the meaning of Section 17200, et seq. of the California Business &

25    Professions Code.  Plaintiffs have standing to bring this action under Business &

26    Professions Code § 17200 because they have suffered injury in fact and have lost

27    money because of the Defendant's conduct.

28    / / /

42.     Defendant has engaged in "unlawful" business acts and practices by its violation of the statutes and regulations, referenced above, including, but not limited to:  California Business & Professions Code section 17200, et seq.; California Business & Professions Code section 17500, et seq.; California Civil Code section 1750, et seq.; and California common law that prohibits fraudulent concealment and breaches of implied warranty.

43.     Defendant has also engaged in "unfair" business acts or practices in that the harm caused by Defendant's manufacture, sale, distribution, and or control over its Formaldehyde Flooring outweighs the utility of such conduct and the conduct offends public policy, is immoral, unscrupulous, unethical, deceitful and offensive, causes substantial injury to Plaintiffs and the Class, and provides Defendant with an unfair competitive advantage over those companies that abide by the law.

44.     Defendant's actions described herein constitute fraud within the meaning of California Business and Professions Code section 17200, et seq. in that Defendant has failed to disclose that the Formaldehyde Flooring contains the Design Defect.  Defendant's failure to disclose the Design Defect was likely to mislead Plaintiffs and the Class into believing that the Formaldehyde Flooring was free from defect and safe to use.

45.     As a result of the conduct described above, Defendant has been and will be unjustly enriched at the expense of Plaintiffs and the Class.

46.     The aforementioned unlawful or unfair business acts or practices conducted by Defendant has been committed in the past and continues to this day. Defendant has failed to acknowledge the wrongful nature of its actions.  Defendant has not corrected or publicly issued individual and comprehensive corrective notices to Plaintiffs and the Class or provided full restitution and disgorgement of all ill-gotten monies either acquired or retained by Defendant as a result thereof, thereby depriving Plaintiffs and the Class of laminate wood flooring that does not have an

1   unreasonable risk of harm for personal injury.

2        47.     Pursuant to the Business & Professions Code section 17203, Plaintiffs

3   and the Class seek an order of this Court requiring Defendant to disgorge all ill-

4   gotten gains and awarding Plaintiffs and the Class full restitution of all monies

5   wrongfully acquired by Defendant by means of such "unlawful" and "unfair"

6   conduct, plus interest and attorneys' fees pursuant to, inter alia, California Code of

7   Civil Procedure section 1021.5, so as to restore any and all monies to Plaintiffs and

8   the Class and the general public, which were acquired and obtained by means of

9   such "unlawful" and "unfair" conduct, and which ill-gotten gains are still retained

10  by Defendant.  Plaintiffs and the Class additionally request that such funds be

11  impounded by the Court or that an asset freeze or constructive trust be imposed

12  upon such monies by Defendant.  Plaintiffs and the Class may be irreparably harmed

13  and/or denied and effective and complete remedy if such an order is not granted.

14                          **SECOND CAUSE OF ACTION**

15  **Violations of the False Advertising Law (Cal. Bus. & Prof. Code § 17500)**

16        48.     Plaintiffs and the Class incorporate by reference each and every

17  preceding paragraph of this Complaint as if fully set forth herein.

18        49.     California Business & Professions Code section 17500 prohibits

19  various deceptive practices in connection with the dissemination in any manner of

20  representations that are likely to deceive members of the public to purchase products

21  such as the Formaldehyde Flooring.

22        50.     Defendant caused advertisements for Formaldehyde Flooring to be

23  placed on its website and on product packaging, among other sources, before the

24  general public and knew or should have known that Formaldehyde Flooring did not

25  conform to the advertisements' representations regarding the safety of the product.

26        51.     As a result of the foregoing, Plaintiffs, and other Class members, and

27  consumers are entitled to injunctive and equitable relief and damages in an amount

28  to be proven at trial.

# THIRD CAUSE OF ACTION

## Violation of Consumer Legal Remedies Act (Cal. Civ. Code § 1750)

52. Plaintiffs and the Class incorporate by reference each and every preceding paragraph of this Complaint as if fully set forth herein.

53. This cause of action arises under the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq. Plaintiffs are consumers as defined by California Civil Code section 1761(d). Defendant's Formaldehyde Flooring constitutes "goods" as defined by California Civil Code section 1761(a). At all times relevant hereto, Defendant constituted a "person" as that term is defined in California Civil Code section 1761(a), and Plaintiffs' and class members' purchases of Formaldehyde Flooring constituted "transactions," as that term is defined in California Civil Code section 1761(b).

54. Defendant violated and continues to violate the CLRA by engaging in the following deceptive practices specifically proscribed by California Civil Code section 1770(a), in transactions with Plaintiffs and class members that were intended to result or which resulted in the sale or lease of goods or services to consumers:

     a. In violation of California Civil Code section 1770(a)(5), Defendant's acts and practices constitute misrepresentations that the Formaldehyde Flooring in question has characteristics, benefits or uses which they do not have;

     b. In violation of California Civil Code section § 1770(a)(7), Defendant has misrepresented that the Formaldehyde Flooring in question is of particular standard, quality and/or grade, when they are of another; and

     c. In violation of California Civil Code section 1770(a)(9), Defendant advertised the Formaldehyde Flooring in question with the intent not to sell them as advertised or represented.

/ / /

55.     Defendant has made uniform representations that its Formaldehyde Flooring is a high-quality product that will perform as represented.  These representations, as set forth above, were false, deceptive, and/or misleading and in violation of the CLRA.

56.     Pursuant to California Civil Code section 1782, Plaintiffs will notify Defendant in writing by certified mail of the particular violations of California Civil Code section 1770 alleged herein, and have demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.  Plaintiffs sent this notice by certified mail, return receipt requested, to Defendant's principal place of business.

57.     If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days after receipt of the California Civil Code section 1782 notice, Plaintiffs will seek actual damages and punitive damages for violation of the Act.  In addition, pursuant to California Civil Code section 1780(a)(2), Plaintiffs will be entitled to, and therefore seek, a Court order enjoining the above-described wrongful acts and practices that violate California Civil Code section 1770.

58.     Plaintiffs and the class will also be entitled to recover attorneys' fees, costs, expenses and disbursements pursuant to California Civil Code sections 1780 and 1781.

## FOURTH CAUSE OF ACTION

### Fraudulent Concealment

59.     Plaintiffs and the Class incorporate by reference each and every preceding paragraph of this Complaint as if fully set forth herein.

60.     Defendant advertised and/or marketed its Formaldehyde Flooring to be safe, of good quality free from defects, and that they would perform in their reasonably expected operation and/or use for their full useful lives.  Defendant failed to disclose that its Formaldehyde Flooring contained a Design Defect, as

1  described above, and that the Design Defect posed a serious risk of personal injury.

2  These facts were not known to Plaintiffs and the Class.

3       61.    Alternatively, Defendant intentionally failed to disclose the fact that its

4  Formaldehyde Flooring contained a Design Defect, a fact that was only known to

5  Defendant, and Plaintiffs and the Class could not have discovered it.  Plaintiffs are

6  informed and thereon believe that Defendant knew of the Design Defect from its

7  performance of standard testing prior to placing the Formaldehyde Flooring into the

8  stream of commerce.

9       62.    Plaintiffs and the Class reasonably relied and continue to rely upon

10  Defendant to sell laminate wood flooring without a Design Defect that causes an

11  unreasonable risk of harm.  Defendant knew or ought to have known that Plaintiffs

12  and the Class relied and/or continues to rely upon Defendant to sell laminate wood

13  flooring in which the entire lifetime of the goods could be fully used without an

14  unreasonable risk of harm.  Defendant's knowledge that its Formaldehyde Flooring

15  contains a Design Defect combined with Defendant's knowledge that Plaintiffs and

16  the Class relied or relies upon Defendant to communicate the true state of facts

17  relating to its Formaldehyde Flooring creates a legal obligation on Defendant's part

18  to disclose to Plaintiffs and the Class these facts. Defendant is in a superior position

19  to know the truth about, and the nature of, the Formaldehyde Flooring.

20       63.    Defendant intended and intends to deceive Plaintiffs and the Class by

21  failing to disclose that the Formaldehyde Flooring contains a Design Defect and is

22  likely to fail in advance of their reasonably expected useful life inasmuch as it

23  causes an unreasonable risk of harm to consumers.

24       64.    Defendant's failure to disclose the Design Defect and risk of harm was

25  material.  Plaintiffs and the Class would not have purchased the Formaldehyde

26  Flooring had they known of the Design Defect and risk of harm, which is

27  significant, recognizable, real, and demonstrable.  Moreover, this same Design

28  Defect, if not remedied, can result in catastrophic personal injury.

65.     Plaintiffs and the Class were harmed. As a proximate result of Defendant's conduct as set forth in this cause of action, Plaintiffs and the Class will now be required to remedy the Design Defect, described above, so as to avoid the distinct likelihood that they may suffer personal injury as a result of such Design Defect.  In addition, Plaintiffs and the Class members have suffered damages, which include, but are not limited to the cost to repair the Design Defect.

66.     Defendant's concealment was a substantial factor in causing that harm.

67.     The wrongful conduct of Defendant, as alleged herein, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious, and/or in conscious disregard for the wellbeing of Plaintiffs and the Class along with other members of the public that may be personally injured by the excessive levels of Formaldehyde gas emitted from the Formaldehyde Flooring.  Defendant intended to cause injury to the Plaintiffs and the Class placing profits over safety.  Defendant engaged and continues to engage in despicable conduct with a willful and conscious disregard of the rights or safety of others.  Defendant subjected, and continues to subject, Plaintiffs and the Class to cruel and unjust hardship.  Accordingly, Plaintiffs and Class members are entitled to an award of punitive damages against Defendant in an amount to deter it from similar conduct in the future.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty

68.     Plaintiffs and the Class incorporate by reference each and every preceding paragraph of this Complaint as if fully set forth herein.

69.     By placing its Formaldehyde Flooring in the stream of commerce, Defendant impliedly warranted that its Formaldehyde Flooring was reasonably safe for its intended use, i.e., to provide flooring without exposing consumers to excess levels of formaldehyde gas.

70.     Defendant's Formaldehyde Flooring is not merchantable.  In breach of the implied warranty of merchantability, Defendant's Formaldehyde Flooring fails

1   emits unlawful amounts of Formaldehyde gas.

2       71.    Defendant's Formaldehyde Flooring was not reasonably safe for its
3   intended use when it left Defendant's control and entered the market.

4       72.    The Formaldehyde Flooring defects were not open and/or obvious to
5   consumers.

6       73.    Any purported limitation of the duration and scope of the implied
7   warranty of merchantability given by Defendant is unreasonable, unconscionable
8   and void, because Defendant knew or recklessly disregarded that the defect in the
9   Formaldehyde Flooring existed and might not be discovered, if at all, until the
10   Formaldehyde Flooring had been used for a period of time longer than the period of
11   any written warranty, and Defendant willfully withheld information about the defect
12   from purchasers of Formaldehyde Flooring.  Moreover, due to the unequal
13   bargaining power between the parties, Plaintiffs and the class members had no
14   meaningful alternative to accepting Defendant's attempted pro forma limitation of
15   the duration of any warranties.

16       74.    As a result, Plaintiffs and proposed class members have been damaged
17   in, inter alia, the amount they paid to purchase and replace Defendant's un-
18   merchantable Formaldehyde Flooring, and if no safe replacement exists, in the
19   amount they paid for their Formaldehyde Flooring.

20   **PRAYER FOR RELIEF**

21       WHEREFORE, Plaintiffs, on behalf of themselves and all other individuals
22   similarly situated, requests the following relief:

23       A. That the Court determine that this action may be maintained as a class
24       action under Rule 23;

25       B. Injunctive relief prohibiting Defendant from continuing to distribute
26       and/or sell laminate flooring products that violate the CARB standards,
27       pursuant to California Business and Professions Code sections 17203
28       and California Civil Code section 1780;

C. Restitution of all monies Defendant received from Plaintiffs and the class members based on its violation of California Business and Professions Code section 17200;

D. Damages to be determined in at trial including actual, compensatory, and consequential damages incurred by Plaintiffs and class members;

E. An award of reasonable attorneys' fees and costs;

F. That the Court award such other and further relief as this Court may deem appropriate.

DATED: March 11, 2015          ROBERTSON & ASSOCIATES, LLP

By: _____
ALEXANDER ROBERTSON, IV
Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby requests a jury trial on the claims so triable.

DATED: March 11, 2015          ROBERTSON & ASSOCIATES, LLP

By: _____
ALEXANDER ROBERTSON, IV
Attorneys for Plaintiffs